**In re John S. SHIKO and Jeanette A. Shiko, Debtors.**

**John S. SHIKO and Jeanette A. Shiko, Plaintiffs,**

v.

**Dale SNYDER, Upper Dauphin National Bank and George Stiely, t/a Stiely's Used Cars, Defendants.**

Bankruptcy No. 1–81–00344.
Adv. No. 1–81–0250.

United States Bankruptcy Court,
M. D. Pennsylvania.

June 22, 1982.

Garrigan & Rosini, Shamokin, Pa., for plaintiffs.

Robert Radebach, Harrisburg, Pa., Roger V. Wiest, Sunbury, Pa., for defendants.

## MEMORANDUM AND ORDER RE: CIVIL CONTEMPT

THOMAS WOOD, Bankruptcy Judge.

Debtors filed a voluntary petition on April 6, 1981. On May 11, 1981, a notice to the creditors was sent informing them of the filing and the automatic stay. One of the notified creditors, Upper Dauphin National Bank (Bank), directed its codefendant, George Stiely, to repossess the vehicles of the debtors and he did so on May 12, 1982. The debtors seek damages on the basis that the codefendants were in contempt of the automatic stay.

## FINDINGS OF FACT

1. Debtors listed defendant Bank as a secured creditor, with an indebtedness of

$3,900.00, secured by two vehicles, i.e., a 1975 LTD Brougham and a 1977 4 WD GMC Truck, together valued at $1,950.00.

2. The relationship between the Bank and George Stiely was such that the Bank was the holder of recourse financing which required Stiely to indemnify the Bank for any loans which were not paid by the vehicle purchasers.

3. The Bank ordered the repossession in the early morning hours of May 12, 1981, prior to its receipt of the debtors' bankruptcy notice on that day. Subsequent to receipt of notice, the Bank made only one unsuccessful attempt to stop Stiely from repossessing the vehicles.

4. At the direction of the Bank, George Stiely repossessed the secured vehicles in the early evening hours of May 12, 1981, despite direct actual notice of the bankruptcy, and notice by the debtors that he was prohibited from repossessing the vehicles.

5. The vehicles were returned to the debtors on May 22, 1981, by stipulation of the parties, only after debtors were forced to file a request for a preliminary injunction upon which a hearing was scheduled, and after all witnesses and parties had arrived in Harrisburg prepared to testify following a trip of sixty miles, more or less.

6. Debtors incurred out-of-pocket expenses of $15.00 for commuting to work and attorney's fees in the amount of $1087.50 and suffered emotional trauma because of the defendants' violative conduct.

### DISCUSSION

The debtors notified Stiely of their bankruptcy and the statutory stay of repossession of their vehicles. Stiely had actual knowledge of the debtors' bankruptcy petition and the automatic stay. *In re Reed*, 11 B.R. 258 (Bkrtcy.D. Utah 1981). A reasonably prudent man would have at least inquired with the bankruptcy court before repossessing the debtors' vehicles. *See In re MacDonald*, 6 B.R. 23 (Bkrtcy.N.D.Ohio 1980). We find that Stiely was in contempt of the automatic stay because he acted after being informed of the bankruptcy proceeding and its legal effect.

The Bank made only one apparent attempt, a phone call, to rescind its directive to Stiely to repossess debtors' vehicles. That attempt was neither a sufficient nor a reasonable effort under the circumstances. We conclude that the defendants were in contempt of the automatic stay and the debtors are entitled to their actual damages.