**CHASE MANHATTAN MORTGAGE CORP., Appellant**

v.

**Angel Ricardo CORDERO; and Pula Virginia Cordero Appellees.**

**No. 06–80529–CIV–JORDAN.**

United States District Court,
S.D. Florida,
Miami Division.

Jan. 19, 2007.

Suzanne Barto Hill, Rumberger Kirk & Caldwell, Orlando, FL, for Plaintiff.

James Earl Copeland, North Palm Beach, FL, for Defendants.

## ORDER

JORDAN, District Judge.

Chase Manhattan Mortgage appeals from the bankruptcy court's order granting sanctions against it for violating the automatic stay in the Cordero's Chapter 13 bankruptcy case, and from the bankruptcy court's order denying reconsideration of the order granting sanctions. For the reasons explained below, the bankruptcy court's order granting sanctions is VACATED.

## I. FACTS

Mr. and Mrs. Cordero filed a petition for bankruptcy under Chapter 13 of the Bankruptcy Code on November 6, 2002. At that time, Chase was servicing a mortgage on the Corderos' homestead property held by a related entity, Mortgage Electronic Registration Systems (the "Chase mortgage"). Chase/MERS was represented by the law firm of Codilis & Stawiarski P.A. ("C & S") in the Corderos' bankruptcy case.

The Corderos filed a Chapter 13 plan on November 6, 2002, in which they acknowledged that they were in default on the Chase mortgage, and set forth a proposed plan to pay off the mortgage and arrearage. The bankruptcy court approved the plan. The Corderos subsequently sought bankruptcy court approval to refinance the Chase mortgage and to pay off their Chapter 13 plan, and such approval was granted on May 20, 2004. The Corderos expected to refinance their mortgage at an interest rate of 5.875%, based on a quotation obtained from Wholesale Home Lenders. However, the Corderos were required to

refinance at the higher rate of 8.375%, because they did not qualify for the lower rate loan.

In the meantime, Chase had taken steps to assign its mortgage on the Corderos' homestead. Specifically, in a May 11, 2004, letter to the Corderos, Chase informed the Corderos that

> [a]s a result of your default on your mortgage loan, we made a claim for payment on the FHA mortgage insurance. In connection with that claim, we assigned your mortgage loan to FHA. FHA sold your mortgage loan to SFJV–2003–1, LLC, which is now the new owner of your mortgage loan ... As a result of the assignment of your mortgage loan to HUD, the payment by FHA of the FHA mortgage insurance claim and the subsequent sale and assignment of your mortgage loan to SFJV–2003–1, LLC, the FHA mortgage insurance on your mortgage loan was terminated and no further mortgage insurance premiums are due by you.

The letter further states that the assignment of the loan "does not affect any term or condition of the mortgage documents / security instruments, other than terms directly related to the servicing of your loan."

On April 4, 2005, the debtors filed a motion for sanctions against Chase arguing that Chase violated the automatic stay, *see* 11 U.S.C. § 362(a), by (a) transferring their mortgage, (b) concluding that the Corderos were in default on the mortgage at the time the transfer was made, and (c) collecting Federal Housing Administration ("FHA") mortgage insurance on account of the Corderos' alleged default. Specifically, the motion alleged that the Corderos had been approved for, and were prepared to close on, new FHA-insured financing on their homestead, but that they were unable to qualify for the new financing because Chase reported to the FHA that their current mortgage was in default. The Corderos further alleged that Chase was receiving monthly plan payments from them at the time the mortgage was declared in default, that Chase did not notify the Corderos before it took action to collect the FHA insurance, and that Chase did not seek stay relief from the bankruptcy court before taking such action. The Corderos' motion for sanctions does not specify which provision of 11 U.S.C. § 362(a) was violated by Chase's conduct.

On April 26, 2005, the bankruptcy court held a hearing on the Corderos' motion for sanctions. Chase did not appear. At the hearing, the bankruptcy court heard testimony from the Corderos and admitted evidence on the approved FHA-insured loan, the actual loan obtained by the Corderos, and the sale of certain real property. The bankruptcy court determined that Chase violated the automatic stay "in transferring its mortgage to America's Servicing Company, ... [and in] conclud[ing] that the debtors, Mr. and Mrs. Cordero, were in default of their mortgage obligation at the time the transfer was made," but did not specify which section of 11 U.S.C. § 362(a) was violated by Chase's conduct. April 26, 2005, Hearing Transcript at 23–24. On June 30, 2005, the bankruptcy court entered a default judgment for sanctions against Chase in the amount of $145,908.80, based on the higher refinancing rate paid by the Corderos on their new loan and the forced sale of certain real property to pay off their plan.

On July 11, 2005, Chase filed a timely motion for rehearing, arguing that it never received proper notice of the motion for sanctions or the hearing, and that it was entitled to rehearing on account of excusable neglect. The bankruptcy court conducted a hearing on Chase's motion. At the hearing, Chase introduced testimony

from the paralegal at C & S who had received the notice of hearing and mistakenly forwarded it to America's Servicing Company, since Chase was no longer the servicer of the Corderos' mortgage. On March 14, 2006, the bankruptcy court entered an order denying the motion for reconsideration without much explanation, and without making any factual findings on the issue of excusable neglect.[1]

On May 31, 2006, Chase appealed the bankruptcy court's order granting sanctions, arguing that it did not violate the automatic stay by collecting the Corderos' debts from a third party. Chase also appealed the bankruptcy court's denial of its motion for reconsideration, arguing that it presented sufficient evidence of excusable neglect such that reconsideration was warranted.

## II. STANDARD OF REVIEW

██ Because of the default judgment against it, on appeal Chase necessarily admits the Corderos' well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting those facts. *See Nishimatsu Const. Co., Ltd. v. Houston Nat. Bank,* 515 F.2d 1200, 1206 (5th Cir.1976). However, Chase's failure to defend the motion for sanctions for violating the stay does not in itself warrant a default judgment. "A default judgment is unassailable on the merits but only so far as it is supported by well-pleaded allegations, assumed to be true." *Id.* A default judgment may only be lawfully entered where there is a sufficient basis in the pleadings. *Id.* Therefore, while Chase may not challenge the sufficiency of the evidence underlying the default judgment on appeal, Chase is entitled to chal-

lenge the sufficiency of the allegations supporting the judgment. *Id.*

██ Whether the Corderos' allegations are sufficient to support a judgment for violation of the automatic stay is a question of law, which I review de novo. *See State of California v. Taxel,* 98 F.3d 1147, 1150 (9th Cir.1996) (whether the automatic stay provisions of 11 U.S.C. § 362 have been violated is a question of law subject to de novo review). *Cf. In re Chase & Sanborn Corp.,* 904 F.2d 588, 593 (11th Cir.1990). The bankruptcy court's refusal to set aside the default judgment for sanctions on the grounds of "excusable neglect" is reviewed for abuse of discretion. *See In re Worldwide Web Systems, Inc.,* 328 F.3d 1291, 1295 (11th Cir.2003).

## III. DISCUSSION

██ It is undisputed that, following the Corderos' petition for bankruptcy, Chase transferred the Corderos' mortgage, declared the mortgage in default, and collected mortgage insurance from the FHA, a third party insurer of the Corderos' mortgage loan. Furthermore, on appeal, Chase is bound by the bankruptcy court's factual findings that the Corderos had obtained an agreement from Wholesale Home Lenders to refinance their mortgage at 4.25% and that the Corderos were ultimately required to refinance their mortgage at 8.375% because of Chase's actions. Notwithstanding these facts, I conclude that the default judgment for sanctions against Chase is not supported by sufficient allegations as a matter of law, and therefore cannot stand.

Under 11 U.S.C. § 362(a), the filing of a petition for bankruptcy prevents creditors from collecting pre-petition debts by en-

---

**1.** Because I conclude that the order granting sanctions must be vacated, I do not reach the

issue of excusable neglect.

joining a broad range of collection efforts, harassment and foreclosure actions (the "automatic stay"), including:

(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate; ...

(6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title;

Any party who willfully violates the automatic stay is liable for actual damages and, in appropriate circumstances, punitive damages. *See* 11 U.S.C. § 362(k)(1) (formerly § 362(h))

In their motion for sanctions, the Corderos did not allege that Chase took any action against them to collect or satisfy the mortgage debt, or that Chase's actions were intended to pressure the Corderos into repaying such debt. Such conduct could be a violation of the automatic stay, *see, e.g., In re Weinhoeft*, 2000 WL 33963628 at *2 (Bkrtcy.C.D.Ill.,2000) (a credit report, even if truthful, could be deemed a violation of the automatic stay if made with the intent to harass or coerce a debtor into paying a pre-petition debt), but there are no allegations in this record to support sanctions on this basis.

Nor did the Corderos allege that Chase's actions, in any way, affected the terms of their existing note and mortgage. Changing the terms of the existing note and mortgage, by, for example, increasing the interest rate or shortening the loan term where not otherwise provided for in the loan agreement, could also violate the automatic stay. *See Matter of Lauretti Corp.*, 86 B.R. 751, 754 (Bkrtcy.D.Conn. 1986). Again, there are no allegations in the record to support sanctions on this basis either.

Finally, the Corderos did not allege that they had a property interest in the FHA insurance covering their mortgage. Chase made a claim against the insurance policy and then terminated the policy. If the Corderos had alleged a property interest in the mortgage insurance policy, there could also have been a basis for upholding the bankruptcy court's order granting sanctions for Chase's alleged violation of the automatic stay. *See, e.g., In re Minoco Group of Companies, Ltd.*, 799 F.2d 517, 519 (9th Cir.1986)(officers and directors liability policies, which insured debtor against indemnity claims made by its officers and directors, benefitted debtor and constituted "property of the estate," so that cancellation of the policies by insurers after debtor filed bankruptcy was automatically stayed); *In re Bivens*, 324 B.R. 39, 43-44 (Bkrtcy.N.D.Ohio 2004) (mortgage lender violated automatic stay by contacting debtor's property insurer and seeking to have adjustments made in coverage).

The Corderos alleged only that Chase violated the automatic stay by taking control or possession of property of the estate by interfering with the Corderos' "contractual property right" to their approved FHA-insured mortgage refinancing. *See* Corderos' Initial Brief at 12–13; Corderos' Motion for Sanctions at 1 (alleging that the Corderos were approved for new FHA-insured financing and that Chase's actions caused them to lose this financing). *See also* 11 U.S.C. § 362(a)(3) (staying any "act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate"). But the Corderos' allegations do not support an award of sanctions on this basis either. Assuming that the Corderos had a contractual right to the refinancing, and that this contractual right was "property of the estate," the record is completely devoid of allegations that Chase sought to *obtain possession* of or *exercise control*

over the new loan agreement, as required to find a violation of the stay under § 362(a)(3). Chase did not cancel the refinancing agreement—the new lender and/or the FHA did. Chase did not increase the terms of the new financing—the new lender did. Chase did not terminate the original note and mortgage—the Corderos did. The only actions taken by Chase were taken with respect to the Corderos' original mortgage and the FHA insurance policy for that mortgage. Therefore, as a matter of law, there is no basis for concluding that Chase violated the stay by taking action to obtain possession of or to exercise control over the Corderos' new FHA-insured loan. *Cf. In re Smith,* 14 B.R. 956, 958 (Bkrtcy.D.Conn. 1981) ("Since the bank's total activity was to assert a claim against and obtain payment from a codebtor, the plaintiff's claim that that conduct violates the automatic stay is without merit and fails as a matter of law.").

After a thorough review of the case law, I cannot find any basis for finding a violation of the automatic stay on the record before me. Chase did not violate the stay by transferring the Corderos' mortgage after the bankruptcy filing. *See In re Cook,* 457 F.3d 561, 568 (6th Cir.2006) (citing *Kapila v. Atlantic Mortgage & Investment Corp.,* 184 F.3d 1335, 1337 (11th Cir.1999)). Chase did not violate the stay by communicating a default to the FHA, where the purpose of the communication was simply to obtain repayment from a third-party guarantor. *Cf. In re Colon,* 212 B.R. 23, 25 (Bkrtcy.D.Puerto Rico 1997) (failure of a higher education corporation to remove a default notation from debtor's record upon the filing of a bankruptcy or the confirmation of the plan "was a communication that the debtor had an uncured default" and did not violate the automatic stay). And Chase did not violate the stay by collecting from a third-party "guarantor" of the Corderos' mortgage debt. *See Lynch v. Johns–Manville Sales Corp.,* 710 F.2d 1194, 1196–97 (6th Cir.1983) ("[i]t is universally acknowledged that an automatic stay of proceedings accorded by § 362 may not be invoked by entities such as sureties, guarantors, co-obligors, or others with a similar legal or factual nexus to the ... debtor"); *In re Smith,* 14 B.R. 956, 957 (Bkrtcy.D.Conn. 1981) (student loan creditor did not violate automatic stay by putting guarantor on notice of the plaintiff's default and requesting payment from guarantor in accordance with their loan guarantee agreement). In sum, the Corderos have not submitted any case law, and I have not found any either, in which a creditor was sanctioned for violating the automatic stay under the circumstances present in this case. I do not doubt that Chase's actions made it more difficult (or impossible) for the Corderos to obtain a second guaranty from the FHA, or that Chase could have improved the Corderos' prospects for reorganization by declining to make a claim against the mortgage insurance policy. Anytime a creditor, such as Chase, seeks repayment from a third party surety or guarantor, such as the FHA, the third party is less likely to guaranty the debtor's future debts. But the fact that the debtor can no longer obtain a guaranty from that third party, is no fault of the collecting creditor, and cannot be held a sanctionable interference with the debtor's property. As explained by the Fourth Circuit in *Credit Alliance Corp. v. Williams,* 851 F.2d 119, 121–22 (4th Cir.1988), a primary rationale for refusing to extend the automatic stay to nonbankrupt third parties is to insure that creditors obtain "the protection they sought and received when they required a third party to guaranty the debt."

## IV. CONCLUSION

The Corderos' motion for sanctions, and supporting evidence, failed to show that

Chase violated the automatic stay. Accordingly, the bankruptcy court's June 30, 2005, order granting sanctions against Chase is VACATED.

If the Corderos believe that the FHA insurance policy was "property of the estate," or that under applicable law Chase violated § 362(a), then they should file a new motion for sanctions.

This matter is remanded to the bankruptcy court for proceedings consistent with this opinion. This case is CLOSED.